# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD ROBINSON, | ) Civil Action No. |
| *Plaintiff*, | ) Filed Electronically |
| vs. | ) |
| DRG HOLDING LLC and EDDIE MERLOTS LLC, | ) |
| | ) **JURY TRIAL DEMANDED** |
| *Defendants*. | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Ronald Robinson, by and through the undersigned counsel, files the following Complaint in Civil Action against Defendants, DRG Holding LLC and Eddie Merlots LLC, averring as follows:

## THE PARTIES

1. Plaintiff, Ronald Robinson ("Plaintiff"), is an adult individual who resides in Pittsburgh, Pennsylvania.

2. Defendant, DRG Holding LLC, is a foreign limited liability company with a principal place of business of 2000 S. Colorado Blvd., Tower 2, Ste. 400, Denver, Colorado 80222.

3. Defendant, Eddie Merlots LLC (collectively, DRB Holding LLC and Eddie Merlots LLC are referred to as "Defendants"), is a foreign limited liability company with a principal place of business of 2000 S. Colorado Blvd., Tower 2, Ste. 400, Denver, Colorado 80222. The Plaintiff reported to work on a regular basis at Defendants' facility located at 444 Liberty Ave #100, Pittsburgh, Pennsylvania 15222 (the "Facility").

**JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION**

A.  **This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

4.  This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments of 2009, 42 U.S.C. § 12101, *et seq.* (the "ADA") (Plaintiff's claims arising under the ADA are identified as the "Federal Law Claims").

5.  Plaintiff is also advancing claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA") (Plaintiff's claims arising under the PHRA are identified as the "State Law Claims").

5.  This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

6.  Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United States Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

B.  **The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

7.  Venue is proper in the United States District Court for the Western District of Pennsylvania as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district. Therefore, venue is proper

pursuant to 28 U.S.C. § 1391(b).

8. Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

9. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to LCvR 3.

**C.  This Court May Exercise Personal Jurisdiction Over Defendants.**

9. This Court may exercise personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301, and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

10. 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.--
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a)(2).

11. Defendants, despite being a foreign limited liability company, maintain the Facility in Pittsburgh, Pennsylvania and carry on a continuous and systematic part of its general business within this Commonwealth.

3

12. Accordingly, Defendants have subjected themselves to the general jurisdiction of Pennsylvania's tribunals and may properly be brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2)(iii).

**D.   Plaintiff Has Exhausted His Administrative Remedies; His Federal and State Law Claims are Properly Before This Court.**

13. Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and 43 P.S. § 959 and may now proceed to bring this action before the Court. Specifically:

   a. On or about August 20, 2025 Plaintiff dually filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims at charge number 533-2025-03112 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission (the "PHRC") seeking redress for the State Law Claims (the "PHRC Complaint").

   b. On or about August 21, 2025 the EEOC issued the Notice of Right to Sue ("RTS Notice"), affording Plaintiff 90 days within which to timely file the Federal Law Claims and the State Law Claims. *See* **Exhibit A**, a true and correct copy of the RTS Notice.

   c. The instant complaint is filed within the 90-day time period.

## FACTUAL BACKGROUND

14. Plaintiff began his employment with Defendants in June 2024 as a Sous Chef at Defendants' facility located at 444 Liberty Ave #100, Pittsburgh, Pennsylvania 15222 (the "Facility").

15. As a Sous Chef, Plaintiff's responsibilities included, but were not limited to, opening and closing the restaurant, managing staff, creating schedules, conducting interviews and hiring, placing food and supply orders, and cooking.

16. Plaintiff worked in a full-time capacity, typically between 40 and 50 hours per week, and was hired with an annual salary that was later adjusted to $67,000.

### Plaintiff's Disability and Requests for Accommodation

17. At all times material hereto, Plaintiff suffers from Diverticulitis, a medically diagnosed, chronic condition that causes unpredictable and at times severe gastrointestinal bleeding (the "Disability").

18. The Disability substantially limits one or more of Plaintiff's major life activities, and as such, Plaintiff is a disabled individual within the meaning of the ADA and the PHRA.

19. At the outset of his employment, Plaintiff disclosed the Disability and its symptoms to Defendants' management, specifically, the Facility's General Manager, Michael Edwards ("Mr. Edwards").

20. Due to his Disability, Plaintiff required and requested reasonable accommodations, which consisted of occasionally taking off a day or two at a time or leaving his shift early to seek immediate medical attention during severe flare-ups.

21. As required by Defendants, Plaintiff provided medical documentation from his physician to support his requests for accommodation, and he utilized his Paid Time Off ("PTO") for these disability-related absences, which occurred approximately two days per month.

### Defendants' Discriminatory and Retaliatory Conduct

22. On or about March 5, 2025, while working a shift at the Facility, Plaintiff began to experience severe rectal bleeding, a symptom of his Disability.

23. Despite the severity of his symptoms, Plaintiff was warned by Defendants' management that he was not permitted to leave the Facility and was required to finish his shift.

24. Plaintiff refused to complete his shift, citing his right to a reasonable

5

accommodation for his Disability.

25. After Plaintiff pleaded, a manager, Lauren Vance ("Ms. Vance"), informed him that she had spoken with the Executive Chef, Patrick Maxey ("Mr. Maxey"), and that Plaintiff was finally permitted to leave the premises.

26. Plaintiff then promptly visited his physician, who provided a note to Defendants stating that Plaintiff's condition required him to remain out of work until March 8, 2025.

27. On or about April 2, 2025, Plaintiff was physically assaulted at his home while intervening in an incident involving his son. He sustained a concussion and other injuries that required hospitalization.

28. On April 3, 2025, Plaintiff was treated at a hospital. That same day, he attempted to contact Mr. Edwards to report his absence but was unable to reach him or leave a voicemail.

29. Immediately thereafter, Plaintiff successfully contacted Mr. Maxey, notifying him of his hospitalization and inability to report to work.

30. At Mr. Maxey's request, Plaintiff provided his medical records and the related police report to Defendants to document his absence.

31. Despite Plaintiff providing proper notice and documentation, Defendants terminated his employment on or about April 12, 2025.

32. The Separation Form issued to Plaintiff stated that his termination was for allegedly failing to report for work on April 3, 2025, and falsely claimed that he did not notify his Executive Chef, General Manager, or Director of Operations.

33. The Separation Form also cited ongoing "attendance issues" as a pretextual basis for Plaintiff's termination.

34. In fact, Plaintiff had properly notified Mr. Maxey of his April 3, 2025 absence, and

6

the "attendance issues" cited by Defendants were Plaintiff's use of protected, reasonable accommodations for his Disability.

35. Defendants' stated reasons for terminating Plaintiff were false and served as a pretext to unlawfully discriminate and retaliate against him for his disability and his use of legally protected reasonable accommodations.

**COUNT I**
**DISABILITY DISCRIMINATION IN VIOLATION OF**
**THE ADA AND THE PHRA**
**(42 U.S.C. § 12101, *et seq.*; 43 P.S. § 951, *et seq.*)**

36. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 35 of this Complaint as if fully set forth at length herein.

37. The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities. 42 U.S.C. § 12101.

38. The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

39. The ADA further defines the term "major life activities" to include, in pertinent part, "working," and the "operation of a major bodily function, including... digestive... functions." 42 U.S.C. § 12102(2).

40. Plaintiff further possesses a "disability" pursuant to the PHRA, the definition of which mirrors that of the ADA. 43 P.S. § 954(p.1).

41. To establish a *prima facie* case of discrimination under the ADA, a Plaintiff must demonstrate: (1) they are a disabled person within the meaning of the ADA; (2) they are otherwise qualified to perform the essential functions of their job, with or without reasonable accommodations by the employer; and (3) they suffered an otherwise adverse employment

decision as a result of discrimination. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

**A.      Plaintiff is a "Disabled Person" Pursuant to 42 U.S.C. § 12102 of the ADA.**

42.     As averred hereinabove, Plaintiff suffers from Diverticulitis, a medically diagnosed physical impairment.

43.     This chronic condition causes unpredictable and severe gastrointestinal bleeding, which substantially limits the major life activity of working and the operation of a major bodily function, namely his digestive functions.

44.     Accordingly, Plaintiff possessed a "disability" under the meaning of the ADA and was correspondingly "disabled" for purposes of establishing his *prima facie* case.

**B.      Plaintiff is a "Qualified Individual" Pursuant to 42 U.S.C. § 12111 of the ADA and Was Qualified to Perform the Essential Duties of His Job.**

45.     The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

46.     At all times material hereto, Plaintiff possessed the requisite skill, experience, education, and other job-related requirements for the position of Sous Chef and was qualified for the role.

47.     Plaintiff was able to perform, and did perform, all essential functions of his position with the reasonable accommodation of occasional time off to manage severe flare-ups of his Disability.

48.     Specifically, Plaintiff successfully performed his duties, which included managing staff, creating schedules, cooking, and placing orders, from the time he commenced employment in June 2024 until Defendants subjected him to unlawful discrimination and termination.

**C.    Plaintiff Suffered an Adverse Employment Action.**

49.    The Third Circuit has held that an "adverse employment action" is an action taken by an employer which is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).

50.    On or about March 5, 2025, Defendants subjected Plaintiff to an adverse action by refusing his request to leave work to seek immediate medical attention for a severe flare-up of his Disability, thereby interfering with the terms and conditions of his employment.

51.    Defendants further subjected Plaintiff to adverse employment actions by weaponizing his disability-related absences, which were protected reasonable accommodations, and classifying them as "attendance issues."

52.    As a direct and proximate result of Defendants' discriminatory animus, Plaintiff suffered the ultimate adverse employment action when his employment was terminated on or about April 12, 2025.

**D.    The Adverse Employment Action was a Result of Unlawful Discrimination.**

53.    Defendants terminated Plaintiff's employment under circumstances that give rise to an inference of unlawful discrimination.

54.    Defendants' stated reasons for Plaintiff's termination—allegedly failing to report for work on April 3, 2025, and ongoing "attendance issues"—were pretextual.

55.    The claim that Plaintiff failed to notify management of his absence is patently false, as Plaintiff promptly and properly notified Executive Chef Patrick Maxey of his hospitalization after being unable to reach General Manager Michael Edwards.

56.    Furthermore, the "attendance issues" cited by Defendants were, in fact, Plaintiff's

use of pre-approved, medically necessary, and legally protected reasonable accommodations for his Disability.

57. By terminating Plaintiff for these pretextual reasons, Defendants discriminated against him on the basis of his Disability, in direct violation of the ADA and the PHRA.

**E.  Plaintiff is Entitled to Punitive Damages.**

58. A plaintiff may recover punitive damages when they can demonstrate a Defendants "engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1).

59. The terms "malice" and "reckless indifference" pertain specifically to the Defendants' knowledge that they may be acting in violation of federal law, not its awareness that it is engaging in discrimination. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999).

60. At all times relevant herein, Defendants, through its managers, including but not limited to Mr. Edwards, Ms. Vance, and Mr. Maxey, acted with malice or reckless indifference to Plaintiff's federally protected rights.

61. Defendants had actual knowledge of Plaintiff's Disability and his need for reasonable accommodation from the outset of his employment.

62. Despite this knowledge, Defendants not only attempted to deny Plaintiff a reasonable accommodation during a medical emergency on March 5, 2025, but subsequently terminated his employment by using his legally protected medical absences as a pretextual justification, demonstrating a conscious disregard for his rights under the ADA and PHRA.

63. As a direct and proximate result of Defendants' discriminatory conduct in violation of the ADA and the PHRA, Plaintiff has suffered tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, as well as substantial emotional distress,

embarrassment, humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries.

WHEREFORE, Plaintiff, Ronald Robinson, seeks a judgment against Defendants, DRG Holding LLC and Eddie Merlots LLC, for willful noncompliance with the ADA and PHRA and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including emotional distress, suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial sufficient to deter Defendants from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and post-judgment interest; and (vi) any further legal and equitable relief as this Court may deem just and proper.

## COUNT II
### RETALIATION IN VIOLATION OF THE ADA AND THE PHRA
**(42 U.S.C. § 12101, *et seq.*; 43 P.S. § 951, *et seq.*)**

64. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 64 of this Complaint as if fully set forth at length herein.

65. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) that they engaged in a protected activity; (2) that the employer took an adverse employment action against them; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 242 (4th Cir. 1997). The PHRA analysis for retaliation is identical.

**A.  Plaintiff Engaged in Protected Activity.**

66. Plaintiff engaged in multiple forms of activity protected by the ADA and the PHRA.

67. First, Plaintiff engaged in protected activity at the outset of his employment when

he disclosed his Disability, Diverticulitis, to Defendants' management, including General Manager Michael Edwards.

68. Second, Plaintiff engaged in protected activity by requesting and utilizing reasonable accommodations for his Disability, namely taking occasional time off for severe flare-ups of his condition.

69. Third, on or about March 5, 2025, Plaintiff engaged in protected activity when he explicitly opposed Defendants' unlawful conduct by asserting his right to a reasonable accommodation and leaving work to seek immediate medical attention for a severe flare-up of his Disability.

70. Fourth, Plaintiff engaged in protected activity on or about April 3, 2025, when he notified his supervisor, Mr. Maxey, of his need to be absent from work due to a medical emergency that required hospitalization.

**B.  Defendants Took a Materially Adverse Employment Action Against Plaintiff.**

71. An employer's action is "materially adverse" in the retaliation context if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006) citing *Rochon v. Gonzales*, 370 U.S. App. D.C. 74; 438 F.3d 1211, 1219.

72. On or about April 12, 2025, Defendants subjected Plaintiff to the ultimate adverse employment action by terminating his employment.

73. This action was sufficiently severe to dissuade a reasonable worker from engaging in protected activity, such as requesting an accommodation or reporting disability discrimination.

**C.  A Causal Connection Exists Between Plaintiff's Protected Activity and His Termination.**

74. A causal connection between the protected activity and the adverse action can be

established by an unusually suggestive temporal proximity or by evidence of ongoing antagonism.

75. Here, a strong causal link is established by both the timing of the events and direct evidence of retaliatory animus.

76. Defendants terminated Plaintiff's employment on April 12, 2025, just nine (9) days after he engaged in the protected activity of reporting his medically necessary absence on April 3, 2025, and approximately one month after he asserted his right to accommodation on March 5, 2025. This unusually suggestive temporal proximity gives rise to an inference of retaliation.

77. More directly, Defendants' stated reasons for Plaintiff's termination establish the causal link. The Separation Form cited "attendance issues" as a basis for the decision.

78. These "attendance issues" were, in fact, Plaintiff's use of legally protected reasonable accommodations for his Disability, which Defendants had previously approved.

79. By terminating Plaintiff for using accommodations to which he was legally entitled, Defendants explicitly retaliated against him for engaging in protected activity.

80. Defendants' additional claim that Plaintiff failed to report his April 3, 2025 absence is patently false and serves as further evidence of pretext for its unlawful retaliation, as Plaintiff properly notified Mr. Maxey.

81. As a direct and proximate result of Defendants' retaliatory conduct in violation of the ADA and the PHRA, Plaintiff has suffered tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, as well as substantial emotional distress, embarrassment, humiliation, and pain and suffering, and is entitled to compensatory damages for these injuries.

WHEREFORE, Plaintiff, Ronald Robinson, seeks a judgment against Defendants, DRG Holding LLC and Eddie Merlots LLC, for willful noncompliance with the ADA and PHRA

and seeks: (i) compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including emotional distress, suffering, mental anguish, inconvenience, and loss of enjoyment of life; (ii) punitive damages in an amount to be determined at trial sufficient to deter Defendants from engaging in future conduct of a similar nature; (iii) equitable relief in the forms of back pay and front pay; (iv) the costs of instituting this action together with reasonable attorney's fees incurred by Plaintiff; (v) pre-judgment and post-judgment interest; and (vi) any further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

82. Plaintiff requests a trial by jury on all matters so triable.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: November 7, 2025

By: */s/ Brendan K. Petrick*
Brendan K. Petrick, Esq. (Pa. I.D. No 88968)

*/s/ Patrick W. Carothers*
Patrick W. Carothers, Esq. (Pa. I.D. No 85721)

*/s/ Elizabeth A. Murphy*
Elizabeth A. Murphy, Esq. (Pa. I.D. No. 334769)

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220
Telephone: 412.910.8025
Fax: 412.991.7510
brendan@workersrightslawgroup.com
patrick@workersrightslawgroup.com
elizabeth@workersrightslawgroup.com

*Counsel for Plaintiff, Ronald Robinson*